IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILTON M. RIDLEY | : | CIVIL ACTION |
| | : | |
| v. | : | 2:04-cv-3860 |
| | : | |
| COSTCO WHOLESALE CORPORATION | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                              **October 7, 2005**

      Hilton M. Ridley is suing Costco Wholesale Corporation ("Costco") for alleged retaliatory discrimination in violation of Title VII, the Pennsylvania Human Relations Act, and 42 U.S.C. § 1981. Before this Court are Costco's motion for summary judgment and various motions in limine. For the reasons set forth in this memorandum, this Court will deny Costco's motion for summary judgment in part because there are genuine issues of material fact over whether Costco retaliated against Ridley for making a complaint of racial discrimination and constructively discharging him. Costco's motion will be granted in part, and Ridley's claim for punitive damages dismissed with prejudice, because there is no evidence Costco acted with malice or reckless disregard for Ridley's federally-protected civil rights.

**FACTS**

      Costco operates a chain of membership-only retail warehouses throughout the United States and abroad. In 1987, Costco hired Hilton M. Ridley, an African-American, as a stocker in its San Leandro, California warehouse. Throughout most of his employment with Costco, Ridley received steady promotions, attaining the position of merchandise manager at Costco's Lancaster,

Pennsylvania warehouse in 1998.[1]

In 1999, Jim Burr became the warehouse manager at the Lancaster facility. Burr evaluated Ridley's performance in November, 1999 and April, 2000. On both occasions, Burr found that Ridley needed to improve his performance in certain areas, such as the timeliness of completing certain reports concerning sales and inventory. Ridley does not deny this was the case. During the summer of 2000, Ridley advised Burr of his desire to have some Sundays off so he could attend church with his family. Ridley was disappointed with Burr's response to his request, and his frustration became apparent during a conversation he had with the assistant warehouse manager over this subject. For his comments, Ridley received a counseling notice from Burr on August 28, 2000 for insubordination. At the same time, Burr decided to transfer Ridley to the position of receiving manager based on Ridley's substandard performance as a merchandising manager.

On September 5, 2000, Ridley met with Jeff Long, Senior Vice-President at Costco, and Yoram Rubanenko, a Regional Vice-President, to complain that Burr had treated him unfairly because of his race. Long and Rubanenko directed Ridley to place the complaint in writing, and Ridley complied with this request when he submitted a report to them on September 12, 2005. At the time Ridley made his complaint, Costco had a well-established anti-discrimination policy in effect, and, as a staff manager, Ridley had received regular training about reporting and handling discrimination issues. Long, after receipt of Ridley's report, immediately forwarded this information to Judy Vadney, Costco's Director of Human Resources, who visited the Lancaster warehouse in

---

[1] A merchandise manager is subordinate only to the warehouse manager and assistant warehouse manager in the Costco chain of command and flanked by three other staff-level managers: a receiving manager, front-end manager, and administrative manager. Ridley had previously held the position of receiving manager at the Lancaster warehouse.

September, 2000 to investigate Ridley's complaint. Upon completion of the investigation, Long sent Ridley a letter dated October 26, 2000 informing Ridley his claim of racial discrimination could not be substantiated. In the letter, Long thanked Ridley for raising his concerns and reiterated that discrimination is not tolerated at Costco. Ridley claims, however, that he did not receive Long's letter until some point in 2001. Long also sent a follow-up letter to Ridley on December 28, 2000 to inquire if Ridley had any questions about Long's October letter and whether he had additional concerns.

On March 30, 2001, Adam Sherman, the new assistant warehouse manager, directed Ridley to remove pallets from the sales floor. While the parties dispute the manner in which Sherman ordered Ridley to move the pallets, Ridley refused Sherman's request to meet with him in his office. Sherman moved the pallets himself, and, as a result of this incident, Burr issued a counseling notice for insubordination.

On April 10, 2001, Ridley used a forklift to lift Costco employee Chris Fournier approximately twelve feet above the warehouse floor to reset an antenna. Company policy prohibited forklift drivers from lifting employees without using a safety cage. Ridley was aware of this policy primarily because he served as the Lancaster facility's OSHA-certified forklift safety trainer. Costco's chief executive officer, Jim Sinegal, issued a memorandum on April 3, 2001 concerning steel and forklift practices as part of an overall initiative to improve safety. As a result of this directive, there was a special managers' meeting held at the Lancaster facility on April 9, 2001, the day prior to Ridley's forklift violation, to discuss forklift safety.

As Ridley lifted Fournier with the forklift, Adam Sherman and the merchandise manager, Brian Long, were both standing in the immediate vicinity and observed the event from start to finish.

Neither Sherman nor Long verbally indicated to Ridley or Fournier that this was a serious transgression of Costco's safety policy or took measures to prevent its occurrence. Sherman, though, immediately reported the event to Burr, who subsequently issued a counseling notice to Ridley during a meeting held later that day. Ridley was also suspended with pay pending an investigation. During the meeting with Burr and Sherman, Ridley asked Sherman why he did not mention anything during the incident. Sherman responded he remained silent to save Ridley any embarrassment on the warehouse floor.

Prior to the forklift incident, Ridley was originally scheduled to meet with Jeff Long on April 11, 2001 to discuss the results of Ridley's claim of racial discrimination. Instead of devoting the meeting to that subject, Long chose to concentrate on the forklift incident and advised Ridley that he would make a determination in the near future concerning the consequences. On April 17, 2001, Burr advised Ridley he would be demoted to front-end manager and transferred to the Christiana, Delaware warehouse. As a result of the demotion, Ridley's annual compensation decreased from $54,000 to $37,000; a difference of $17,000. Former Costco employee Amy Zvoksky observed merchandise manager Brian Long violate the same forklift safety rule several times after Ridley was disciplined. Despite Zvorsky's notification to Burr about Long's safety infractions, Long was never disciplined. Zvorsky also recalls Burr instructing her to monitor Ridley on those occasions when Ridley and his family decided to shop at the Lancaster facility after Ridley was demoted and transferred. Additionally, while Ridley was performing his duties at the Christiana warehouse, he witnessed the same type of forklift violation that resulted in his demotion. When Ridley warned the offending party of the seriousness of the infraction, he was advised that the assistant manager was

aware that the forklift was used for this purpose and sanctioned this procedure. As a result, these individuals were not disciplined.

Within the first five weeks of reporting for duty at the Christiana warehouse, Ridley was issued three counseling notices by the warehouse manager, Glenda Tuttle. The first notice was for breaking the hard-wired battery charger associated with the facility's riding scrubber. The next two were for excessive absences and mishandling cash receipts at the store, respectively. Ridley made it known to Jeff Long, though, that the counseling notice for excessive absences may not have been warranted because some of the absences should have permitted under the Family Medical Leave Act.

On May 15, 2001, Ridley wrote to Jeff Long to explain that the demotion and transfer imposed a hardship on him and his family. In that letter, Ridley stated he did not have an adequate opportunity to discuss the investigation into his claim of racial discrimination with Long and that the demotion and transfer were also motivated by race. Long's letter, dated June 6, 2001, advised Ridley he could apply for a position at Costco's new warehouse in Harrisburg, which was closer geographically than the Christiana facility. (Until Costco opened its Harrisburg warehouse, the Christiana facility was the closest one to Lancaster and is approximately fifty-five miles from Ridley's residence.) Long also enclosed a copy of his October 26, 2000 letter, which set forth the results of the investigation into Ridley's claim of racial discrimination.

Ridley resigned from Costco on June 13, 2001. In responding to Jeff Long's June 6, 2001 letter, Ridley acknowledged Long's invitation to apply for a position at the Harrisburg warehouse, but explained that he had already decided to resign his employment with Costco.

**DISCUSSION**

A motion for summary judgment will only be granted if there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This initially requires a court to determine whether the moving party has demonstrated there is no dispute concerning the factual resolution of an essential element of the cause of action. To accomplish this task, a court must consider the evidence presented by the moving party and draw all reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the moving party carries the initial burden of demonstrating there is no genuine issue of material fact, then the non-moving party, to withstand a motion for summary judgment, must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). In this case, Ridley has adduced evidence from the record to present genuine issues of material fact concerning his claim for retaliatory discrimination.

There are three elements to a prima facie case for retaliatory discrimination under Title VII,[2] which declares that "it shall be an unlawful employment practice for an employer to discriminate against" an employee who has made a charge of discrimination. 42 U.S.C. § 2000e-3(a). First, the plaintiff must prove that he or she engaged in a protected activity. *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995). It is universally recognized in Title VII cases, and the parties here do not dispute, that an employee who complains to an employer about race discrimination has engaged in a protected activity. *Id.* Second, the employer must have taken an adverse employment action against the claimant. *Id.* Costco acknowledges that Ridley suffered an adverse employment action (i.e., the demotion and transfer) after he complained of race discrimination, so this element is also

---

[2]The same standard applies to alleged violations of the Pennsylvania Human Relations Act. *Jones v. School Dist. of Phila*, 198 F.3d 403, 409 (3d Cir. 1999); *see also Chmill v. Pittsburgh*, 412 A.2d 860, 870-71 (Pa. 1980).

6

not in dispute.  It is the third element of the prima facie case – whether there is a causal connection between the complaint of race discrimination and the adverse employment action – that gives rise to Costco's motion for summary judgment.

Costco, the moving party here, argues the facts, viewed in the light most favorable to Ridley, support only one conclusion: there is no proof that Costco's decision to demote Ridley was pretextual, but done for legitimate business reasons.  This Court, however, does not share Costco's conclusion because Ridley has adduced evidence from the record that reveals there are genuine issues of material fact concerning the causation and pretext elements of his claim for retaliatory discrimination.  Simply put, "[t]he role of determining whether the inference of discrimination is warranted must remain within the province of the jury, because a finding of discrimination is at the bottom a determination of intent."  *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996).

Even though Ridley admittedly violated Costco's policy for forklift safety, Ridley directs this Court to evidence that the forklift policy was applied inconsistently.  Zvorsky's statement that she observed Brian Long violate the same forklift safety rule without suffering an adverse employment action presents a genuine issue of fact whether the decision to discipline Ridley was motivated, in part, by a retaliatory animus.  Thus, the inconsistent application of standards in this case presents a genuine issue of fact from which an inference of causation and pretext could be drawn.  Additionally, the presence of two managers in the immediate vicinity of the forklift infraction who not only witnessed it, but also did nothing to stop it, presents an issue of material fact because an inference could be drawn that certain managers at the Lancaster facility were acting opportunistically when the violation occurred.  Finally, assistant manager Sherman's statement that he did not alert Ridley

of the violation to save him from embarrassment also places in dispute Costco's claim it was fulfilling its new forklift safety initiative in an even-handed manner without any desire to retaliate against Ridley.

Costco also argues that there is no genuine issue of material fact concerning Ridley's claim of constructive discharge. To prove constructive discharge, a plaintiff must demonstrate the employer's allegedly discriminatory conduct resulted in intolerable working conditions such that a reasonable person would feel compelled to resign. *Sheridan*, 100 F.3d at 1075 (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992)). The standard is an objective one, and subjective beliefs are irrelevant. *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888-89 (3d Cir. 1984). Included in this calculus are factors such as the loss of responsibility and prestige, the removal of a person from a supervisory position, and the imposition of severe disciplinary measures after a substantial period of employment without incident. *Sheridan*, 100 F.3d at 1075. Here, Costco argues there are no facts to indicate that a "reasonable" person would resign. Upon careful review, though, this Court concludes the evidence demonstrates there are genuine issues of fact of constructive discharge. Ridley received steady promotions during the vast majority of his employment with Costco; however, during his last year with the company, he received numerous counseling notices, as well as demotion from a supervisory role to a position of substantially less prestige and responsibility. This contrast alone presents a genuine issue of material fact concerning Ridley's constructive discharge claim because a jury could conclude that Ridley acted reasonably in resigning his employment under such conditions.

Finally, Costco argues summary judgment should be granted in its favor on the issue of Ridley's claim for punitive damages. The Court agrees with Costco's position and will dismiss

Ridley's claim for punitive damages with prejudice because there is no evidence that Costco acted with malice or reckless disregard for Ridley's federally protected civil rights. 42 U.S.C. § 1981a(b)(1); *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526 (1999). In *Kolstad*, the Supreme Court concluded an employer may not be held vicariously liable for punitive damages for the discriminatory actions of its managers when those decisions are contrary to an employer's good-faith efforts to comply with Title VII. *Id.* at 545. Reasoning that the primary purpose of Title VII is to prevent discrimination, an employer that institutes an anti-discrimination policy and makes a good-faith effort to train its employees about the importance of avoiding discrimination in the workplace has complied with the statute as fully as can be expected. *Id.* Therefore, the traditional principles of vicariously liability for punitive damage claims do not apply in Title VII situations because there would be no incentive for employers to institute anti-discrimination policies. *Id.*

It is undisputed that at the time of Ridley's complaint of racial discrimination and throughout his employment, Costco had an anti-discrimination policy in place and made a good-faith effort to implement and enforce it. Thus, application of the rule in *Kolstad* removes the specter of punitive damages for the alleged transgressions of Costco's managerial agents. In his reply brief, though, Ridley's argues he is entitled to punitive damages because Costco failed to investigate his allegations of retaliatory discrimination contained in the May 15, 2001 letter to Jeff Long. Thus, he asserts, Costco did not make a good-faith effort to implement its anti-discrimination policy. The undisputed facts, however, suggest otherwise.

Viewing Ridley's letter of May 15, 2001 in the light most favorable to him does not present a factual issue of whether Jeff Long's response constitutes reckless indifference or malice to Ridley's civil rights. To construe Ridley's May 15, 2001 letter as an unequivocal demand for an investigation

into a claim of retaliatory discrimination is not supported by its contents. The letter contains a litany of complaints against Costco and states the transfer has imposed a financial hardship on his family. Although Ridley's letter claims racial discrimination and his complaint to the company about it were part of the reason he was demoted, Costco had, at that point, already provided Ridley with its bona fide reasons for demoting him. Jeff Long responded to Ridley's letter by memo dated June 6, 2001 and included a copy of his October 26, 2000 letter advising Ridley of the results of Costco's investigation into racial discrimination.[3] Thus, it would be inconsistent with *Kolstad* to permit an employee's subjective beliefs over the company's responsiveness to open the door to a punitive damages claim when the undisputed facts demonstrate that Costco's consistently made good-faith efforts to implement and enforce its anti-discrimination policy.

Therefore, Costco's motion for summary judgment will be granted in this regard and Ridley's claim for punitive damages dismissed with prejudice.

**Motions in Limine**

Before the pre-trial conference on October 3, 2005, each party filed several motions in limine to preclude the opposing party from offering certain evidence at trial. Upon careful consideration of the arguments advanced, this Court will grant, in whole or in part, the following motions.[4]

    1.    *Accusations of Plaintiff's Involvement With Illegal Drugs While in the Military*

In 1983, when Ridley was serving in the United States Army, he was anonymously accused of using and/or selling marijuana. Ridley argues this evidence is not relevant to his lawsuit against

---

[3] This was the same memo that invited Ridley to apply for a transfer to the Harrisburg warehouse.

[4] This memorandum only discusses the motions that the Court will grant. Those motions the Court will deny are disposed of summarily in the accompanying Order.

Costco for retaliatory discrimination. Alternatively, Ridley contends that even if a plausible argument could be made for its relevancy, the evidence should be excluded pursuant to Federal Rule of Evidence 403 because the danger of unfair prejudice substantially outweighs its probative value. Defendants do not oppose this motion.

Under Federal Rule Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Rule 402, relevant evidence is generally admissible, subject to certain limitations. One such limitation is the policy-based exclusion contained in Rule 403: relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value (i.e., the probative value is extremely minimal when balanced against the problems that would likely occur from admitting the proffered evidence). The danger that this rule attempts to overcome is the unfavorable and potentially irrelevant emotional response that a fact-finder may assign to the evidence. Thus, exclusion of evidence under Rule 403 prevents one side from gaining an unfair advantage because of the likelihood that the proffered evidence would be used for an improper purpose. Here, the relevancy of Mr. Ridley's involvement with drugs while serving in the military is extremely questionable. This evidence concerns an event that is wholly outside the facts that give rise to Ridley's lawsuit for retaliatory discrimination. Even if a plausible argument could be made for its relevancy, the danger of unfair prejudice substantially outweighs the probative value of this evidence because a fact-finder would likely use evidence of Ridley's involvement with drugs to characterize him as a person who is not law-abiding and predisposed to disregard rules and regulations. Such an association would be unfairly prejudicial to Ridley and amounts to improper use of the evidence because no aspect of Ridley's job

11

performance or his demotion involved illegal activity.

Therefore, this motion will be granted and any evidence of Ridley's involvement with illegal drugs while he was serving in the military will be excluded at trial.

2.  *The Pennsylvania Human Relations Commission ("PHRC") Investigation Report*

On July 18, 2001, Mr. Ridley complained to the PHRC about alleged racial and retaliatory discrimination at Costco. Ridley "dual-filed" the complaint with the EEOC. The PHRC determined, through its April 23, 2003 "Findings of the Investigation," that Ridley was not the victim of racial or retaliatory discrimination. Counts 1, 3, 6, and 7 of the Findings all deal with alleged racial discrimination, while Counts 2, 4, 5, and 8 address alleged retaliatory discrimination. Specifically, the PHRC concluded after its investigation the elements of a prima facie case for racial or retaliatory discrimination were not satisfied. On August 6, 2005, the EEOC issued a one-page "Dismissal and Notice of Rights," advising Ridley that the agency adopted the results of the PHRC's Findings *in toto*.

Plaintiff argues the PHRC's report is untrustworthy pursuant to the last phrase in Fed. R. Evid. 803(8)(C) and should be excluded under Rule 403.

Federal Rule of Evidence 803(8)(C) is an exception to the general rule that hearsay evidence is inadmissible. Specifically, this rule permits government "[r]ecords, reports, statements or data compilations" that contain factual findings of an investigation to be admitted in civil actions, "unless the sources of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(C). (The availability of the hearsay declarant is immaterial.) The exception assumes admissibility, unless, upon balancing of the following list of non-exclusive factors, a strong negative showing results. *Id.* advisory committee's note. Those factors are: (1) the timeliness of the

investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; and (4) possible motivation problems (i.e., evidence of bias). *Id.* Even if a government report is found to be trustworthy, it may, nevertheless, be excluded after application of the Rule 403 balancing test. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-44 (3d Cir. 2002) (holding that the district court did not abuse its discretion by excluding an EEOC report after engaging in a Rule 403 balancing). The rule from *Coleman*, which governs the situation here, is that an EEOC or similar type of report is not *per se* admissible as more probative than prejudicial. Thus, a district court is still free to exclude a government report if the danger of unfair prejudice, jury confusion, undue delay, waste of time, or needless presentation of cumulative evidence substantially outweighs its probative value. The Third Circuit in *Coleman* made clear, though, that trustworthy government reports are probative evidence and, accordingly, difficult to exclude.

Here, the April 23, 2003 PHRC Findings is a government report. Although trustworthiness and admissibility are assumed (pursuant to *Coleman*), it is nevertheless instructive to evaluate the four factors to determine whether sufficient negative factors are present. In short, balancing the four factors tips the scale in favor of a finding that the PHRC report is indeed trustworthy.

First, the investigation was timely, and Ridley does not argue otherwise. In fact, Ridley reported the matter to the PHRC in July, 2001, shortly after the alleged discrimination and retaliation, and the commission released the Findings in April, 2003. Thus, Ridley's complaint to the PHRC was undoubtedly timely, and, given the nature of the PHRC's report, there is no indication that the Commission's investigation was delinquent. Application of the second factor is problematic because the report does not identify the official(s) who investigated the matter. Therefore, there is no way to ascertain the experience of those directly involved in making the factual findings and

conclusions of law, rendering this a neutral factor in the balancing process. A subsequent letter to Ridley denying his request for reconsideration is signed by Zlatko Jurisic, a Human Relations Representative for the PHRC, and the parties, in their briefs, have assumed that he authored the report. Mr. Jurisic's letter belies this assumption because he refers to the report as one issued by the Commission. Without a hearing, application of the third factor tilts the scale slightly to the negative side because the opportunity to be heard would have afforded Ridley greater due process.[5] Lastly, Ridley has not directed this Court to any evidence that would have led to bias on the part of the Commission. Therefore, given the absence of any "motivation problems" and upon consideration of the lack of a negative showing with regard to the other factors, the PHRC Findings should be regarded as trustworthy under Rule 803(8)(C).

Turning to Rule 403, the findings of fact and conclusions of law in the PHRC's report that discuss retaliatory discrimination should be admitted because they are highly probative. Simply put, the PHRC undertook a *de novo* review of the facts concerning Ridley's allegations of retaliation. Those facts are the same ones set forth in Ridley's lawsuit, so the PHRC's conclusions as to the existence of retaliatory discrimination are relevant and highly probative. On the other hand, the findings of fact and conclusions of law that accompany Counts 1, 3, 6, and 7, which discuss Ridley's allegations of racial discrimination, should be excluded. Racial discrimination is not an issue in this lawsuit, so to introduce such evidence creates a substantial risk of confusion for the jury and would result in undue delay and a waste of time.

To summarize, the findings of fact and conclusions of law associated with Ridley's allegations of racial discrimination should be excluded, but those findings of fact and conclusions

---

[5] Plaintiff does not argue, though, that the PHRC's current procedures are inadequate from a due process standpoint.

of law associated with retaliatory discrimination should be admitted. Finally, the EEOC's one-page notice, which adopts the PHRC's findings of facts and conclusions of law, will be excluded because the EEOC did not independently investigate this matter.

3. *Exclusion of Plaintiff's Jury Demand for Front Pay and Front Pay Damages*

Reinstatement and front pay are two alternative remedies under Title VII designed to compensate a plaintiff for future lost earnings. Usually when reinstatement is not practicable (i.e., there is irreparable animosity between the parties), a court may award front pay to the plaintiff in lieu of reinstatement. *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 835 (3d Cir. 1994). A "district court has broad discretion in determining whether reinstatement is appropriate, and its determination is reviewed under an abuse-of-discretion standard." *Id.* at 832. In the event that a district court determines that front pay is appropriate, the amount of front-pay damages is often a jury question; not one for the court. *Maxfield v. Sinclair Int'l*, 766 F.2d 788 (3d Cir. 1985).

Accordingly, Costco's motion will be granted in part to preclude the jury from determining the availability of front pay as a remedy; however, the motion will be denied to the extent Costco seeks to exclude all evidence of front pay damages. Simply put, in the event the jurors must determine the amount of front pay damages, it will be necessary for them to hear testimony on that subject.

Accordingly, I enter the following:

**<u>ORDER</u>**

AND NOW, this 7th day of October, 2005, it is hereby ORDERED that Defendant's motion for summary judgment (Document 23) is DENIED IN PART because there are genuine issues of material fact concerning Plaintiff's retaliatory discrimination and constructive discharge claims.

Defendant's motion is GRANTED IN PART, and Plaintiff's claim for punitive damages DISMISSED WITH PREJUDICE, because there is no evidence to demonstrate that Costco acted with malice or reckless indifference to Plaintiff's civil rights. Plaintiff's motion for leave to file a sur-reply brief (Document 50) is also DENIED.

It is further ORDERED that:

(1) Plaintiff's motion in limine to exclude evidence of his involvement with illegal drugs while serving in the military (Document 33) is GRANTED;

(2) Plaintiff's motion in limine to exclude the PHRC's "Findings of the Investigation" (Document 35) is GRANTED IN PART and DENIED IN PART as set forth in this memorandum;

(3) Defendant's motion in limine to bar the testimony of Plaintiff's damages expert (Document 55) is DENIED;

(4) Defendant's motion in limine to strike Plaintiff's jury demand for front pay and exclude evidence of front pay damages (Document 56) is GRANTED IN PART and DENIED IN PART as set forth in this memorandum;

(5) Defendant's motion in limine to exclude evidence in support of plaintiff's punitive damages claim (Document 57) is DENIED AS MOOT; and

(6) Plaintiff's motion in limine to exclude the testimony of Yoram Rubanenko (Document 58) is DENIED.

BY THE COURT:

Juan R. Sánchez, J.

16